| | |
|---|---|
| 1 | ALAN W. SPARER (No. 104921) |
| 2 | MARC HABER (No. 192981)<br>SPARER LAW GROUP |
| 3 | 100 Pine Street, 33rd Floor<br>San Francisco, California  94111-5128 |
| 4 | Telephone:  415/217-7300<br>Facsimile:   415/217-7307 |
| 5 | asparer@sparerlaw.com<br>mhaber@sparerlaw.com |
| 6 | Attorneys for Plaintiff LOI TRAN |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOI TRAN,<br><br>          Plaintiff,<br><br>     v.<br><br>THIRD AVENUE MANAGEMENT LLC; THIRD AVENUE TRUST; M.J. WHITMAN LLC; MARTIN J. WHITMAN; DAVID M. BARSE; JACK W. ABER; WILLIAM E. CHAPMAN, II; LUCINDA FRANKS; EDWARD J. KAIER; MARVIN MOSER; ERIC RAKOWSKI; MARTIN SHUBIK; CHARLES C. WALDEN; VINCENT J. DUGAN; W. JAMES HALL III; MICHAEL BUONO; THOMAS LAPOINTE; NATHANIEL KIRK; EDWIN TAI; and JOSEPH ZALEWSKI;<br><br>          Defendants. | No. 2:16-cv-00602<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

**SUMMARY OF THE ACTION**

1. This is an action by and on behalf of persons who purchased Institutional and Investor class shares of Third Avenue Focused Credit Fund (the "Fund") (Ticker Symbols: TFCIX (Institutional shares) and TFCVX (Investor shares) during the period from March 1, 2013 to December 10, 2015 (the "Class Period"), pursuant or traceable to one of the Fund's registration statements or prospectuses.

2. Plaintiff Loi Tran, individually and on behalf of all other persons similarly situated, alleges the following upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by and through his undersigned counsel, which included, *inter alia*, review of Securities and Exchange Commission ("SEC") filings, various websites and Internet information sources, analyst reports, news articles, bond issues, trading reports, and other publicly available materials.

3. Plaintiff alleges that the Fund, its investment advisor, underwriter, trustees, officers, and other Defendants violated the Securities Act of 1933 ("Securities Act") by registering, offering, and selling shares of the Fund pursuant to false and misleading registration statements and prospectuses.

4. One of the key features of mutual funds is that they allow investors to redeem their shares on any day during which the exchange upon which they are traded is open. To meet this obligation, mutual funds must ensure that they have adequate liquid assets sufficient to meet redemption requests. Like most mutual funds, the Fund promised investors that it would hold only a small portion of its assets in illiquid securities. The Fund's Registration Statements and Prospectuses issued and filed with the SEC during the relevant period represented that the Fund would hold no more than 15% of its assets in illiquid securities. In fact, during the Class Period a far greater portion of the Fund consisted of illiquid assets. As far back as 2012, more than 20% of the Fund was held in illiquid securities that could

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

not quickly be sold at the value at which they were held.  From 2012 to 2014, the Fund grew in size from $1 billion to $3.5 billion.  As a result, although it held excessive amounts of illiquid securities, it did not face significant pressure to sell them in order to meet redemptions.  In 2014 and 2015, however, the Fund faced growing redemptions, ultimately shrinking to less than $1 billion in assets.  The increasing redemptions combined with the excessive illiquidity of the Fund's remaining assets drove down the net asset value of the Fund and threatened to force it to sell illiquid securities at fire sale prices.  Ultimately, the Fund became so highly concentrated in illiquid securities that on December 10, 2015, Defendants suspended redemptions in the Fund and announced a plan to sell its remaining assets over time.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77i, 77o.

6.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §§1331, 1332(d), 1367.

7.     Venue is proper in this District pursuant to 15 U.S.C. §77v and 28 U.S.C. §139l(b).  Several of the Defendants are found in, inhabitants of, or transact business in this District.  In addition, many of the acts giving rise to the violations of law complained of herein, including the dissemination to shareholders of the Registration Statements and Prospectuses, occurred in this District.

8.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

# PARTIES

## A. Plaintiff.

9. Plaintiff Loi Tran, a resident of Los Angeles County, purchased shares of the Fund during the relevant time period pursuant to or traceable to a registration statement and prospectus at issue in this Complaint and has been damaged thereby.

## B. Defendants.

10. Defendant Third Avenue Trust (the "Trust") is an open-end management investment company that consists of different investment series, including Third Avenue Focused Credit Fund (the "Fund"). The Trust is organized under the laws of Delaware pursuant to a Trust Instrument dated October 31, 1996. The Trust is headquartered at 622 Third Avenue, New York, New York 10017.

11. Defendant Third Avenue Management LLC (the "Adviser") is the manager and investment adviser of the Fund and chooses the Fund's investments and handles its day-to-day business. The Adviser is headquartered at 622 Third Avenue, New York, New York 10017. The Adviser carries out its duties, subject to the policies established by the Fund's Board of Trustees, under an investment advisory agreement. As compensation for its services, the Adviser receives a management fee.

12. Defendant M.J. Whitman LLC (the "Distributor"), is an affiliate of the Manager and was, during the relevant time period, the principal underwriter and distributor for shares of the Fund. The Distributor also served as the Trust's agent for the purpose of the continuous public offering of the Fund's shares. The Distributor is also located at 622 Third Avenue, New York, New York 10017.

13. Defendant Martin J. Whitman ("Whitman") is the Chairman of the Board of Trustees of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

14. Defendant David M. Barse ("Barse") was President, Chief Executive Officer, and Trustee of the Trust, President and Chief Executive Officer of the

Adviser, and President, Director and Chief Executive Officer of the Distributor during the Class Period. Barse signed each Registration Statement effective during the Class Period through December 10, 2015.

15. Defendant Jack W. Aber ("Aber") is Trustee of the Trust and signed each Registration Statement effective during the Class Period through December 10, 2015.

16. Defendant William E. Chapman, II ("Chapman") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

17. Defendant Lucinda Franks ("Franks") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

18. Defendant Edward J. Kaier ("Kaier") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

19. Defendant Marvin Moser ("Moser") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

20. Defendant Eric Rakowski ("Rakowski") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

21. Defendant Martin Shubik ("Shubik") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

22. Defendant Charles C. Walden ("Walden") is a Trustee of the Fund and signed each Registration Statement effective during the Class Period through December 10, 2015.

23. Defendant Vincent J. Dugan ("Dugan") has been Treasurer and Chief

1  Financial Officer of the Trust, and Chief Operating Officer and Chief Financial
2  Officer of the Adviser and the Distributor, since 2004. He was a member of the
3  Trust's Valuation Committee during the Class Period and signed each Registration
4  Statement effective during the Class Period through December 10, 2015.

5        24. Defendant W. James Hall III ("Hall") has been General Counsel and
6  Secretary of the Trust, the Adviser, and the Distributor since 2000. He was a
7  member of the Trust's Valuation Committee during the Class Period.

8        25. Defendant Michael Buono ("Buono") has been Controller of the Trust,
9  the Adviser, and the Distributor since 2006. He was a member of the Trust's
10 Valuation Committee during the Class Period.

11       26. Defendant Thomas Lapointe ("Lapointe") has been a Portfolio
12 Manager and Team Leader for the Fund since 2010. He participated in the drafting
13 of the prospectuses pursuant to which the Fund was sold.

14       27. Defendant Nathaniel Kirk ("Kirk") has been a Portfolio Manager for
15 the Fund since 2013. He participated in the drafting of the prospectuses pursuant to
16 which the Fund was sold.

17       28. Defendant Edwin Tai ("Tai") has been a Portfolio Manager and Team
18 Leader for the Fund since 2013. He participated in the drafting of the prospectuses
19 pursuant to which the Fund was sold.

20       29. Defendant Joseph Zalewski ("Zalewski") has been a Portfolio
21 Manager and Team Leader for the Fund since 2013. He participated in the drafting
22 of the prospectuses pursuant to which the Fund was sold.

23       30. This complaint refers to Defendants Whitman, Barse, Aber, Chapman,
24 Franks, Kaier, Moser, Rakowski, Shubik, and Walden collectively as the "Trustee
25 Defendants."

26       31. This complaint refers to Defendants Barse, Dugan, Hall, Buono,
27 Lapointe, Kirk, Tai, and Zalewski collectively as the "Officer Defendants."

28       32. This complaint refers to the Trustee Defendants and the Officer

Defendants collectively as the "Individual Defendants."

## DEFENDANTS' FALSE AND DEFICIENT REGISTRATION STATEMENT

33. This is a class action on behalf of all persons or entities who acquired the Fund's shares during the period from March 1, 2013 to December 10, 2015 pursuant to the Fund's untrue and misleading registration statements, prospectuses, and annual reports filed in connection with the offerings of the Fund's shares during this period (the "Registration Statements").

34. The Fund's shares were issued to investors pursuant to the following series of Registration Statements, Prospectuses, and Statements of Additional Information ("SAIs") filed with the SEC and made effective during the Class Period:

- Registration Statement filed pursuant to Form N-1A, Prospectus, SAI, and Annual Report incorporated in the Prospectus by reference on March 1, 2013 (collectively "March 2013 Prospectus");

- Registration Statement filed pursuant to Form N-1A, Prospectus, SAI, and Annual Report incorporated in the Prospectus by reference on February 28, 2014 (collectively "February 2014 Prospectus");

- Registration Statement filed pursuant to Form N-1A, Prospectus, SAI, and Annual Report incorporated in the Prospectus by reference on March 1, 2015 (collectively "March 2015 Prospectus");

35. Each of the foregoing documents was negligently prepared and contained untrue statements of material fact and/or omitted to state other facts necessary to make the statements made not misleading, as described below. While the documents were not identical, they contained many substantially similar untrue statements and were rendered misleading by substantially similar omissions of material fact.

36. A reasonable investor would have viewed the undisclosed facts

described herein, jointly and severally, as having altered the total mix of available information. A reasonable investor also would understand that the undisclosed facts would cause the Fund to undertake materially increased investment risk during the Class Period because the Fund was investing in a manner that was of materially greater risk than had been disclosed.

37. The false statements and omissions of material fact contained in the Fund's Registration Statements and SEC-filed materials included the following statements made in the March 2013 Prospectus:

- "None of the Funds will purchase or otherwise acquire any investment if, as a result, more than 15% of its net assets (taken at current market value) would be invested in securities that are illiquid."

- "Generally speaking, an illiquid security is any asset or investment of which a Fund cannot sell a normal trading unit in the ordinary course of business within seven days at approximately the value at which a Fund has valued the asset or investment, including securities that cannot be sold publicly due to legal or contractual restrictions."

- "Also, should illiquid assets ever exceed 15% of a Fund's net assets, the Adviser would work with the Board to determine the appropriate steps and timeframe for alleviating such excess."

- "The Adviser's Executive Risk Committee (the 'Committee') recommends certain position limitation guidelines for the Funds. The guidelines supplement limits imposed by regulatory agencies and the Prospectus. The guidelines are not meant to impose rigid limitations and from time to time the Committee fully expects exceptions to occur. However, exceptions may only occur with prior approval from the Committee. These guidelines serve to provide enhanced oversight of more concentrated positions."

38. Substantially similar representations were made in the February 2014 Prospectus and the March 2015 Prospectus.

39. In addition, each Annual Report, incorporated by reference into the prospectuses and SAIs, supposedly identified the percentage of net assets of the Fund that were illiquid. Each Annual Report stated that the "Fund may invest up to 15% of its total net assets in securities which are not readily marketable, including those which are restricted as to disposition under applicable securities laws ('restricted securities')." For example, as of October 31, 2015, Defendants claimed that only 13.4% of the Fund was illiquid. These statements likewise were false or misleading, as an independent investigation has determined that a far greater percentage of the Fund's assets were in fact illiquid.

40. These statements were false and misleading. An analysis of the Fund's holdings in 2013, 2014, and 2015 has shown that the Fund consistently held more than 15% of its net assets in illiquid securities that could not be sold within seven days at approximately the value at which the Fund held them. Defendants did not take adequate steps to reduce the Fund's illiquid holdings as the excessive illiquidity remained over a period of years. Nor did the Adviser's Executive Risk Committee take adequate steps to control the risks of the Fund or ensure that it remained within its 15% limit on illiquid securities. The Fund was so concentrated in illiquid securities that is should not have been offered as a mutual fund allowing daily redemptions. Redemptions in the Fund eventually caused Defendants to sell less liquid assets that reduced the Fund's share price, leading to more redemptions and more losses. This death spiral lead Defendants ultimately to take the nearly unprecedented step of shutting down the Fund and suspending redemptions. The investors remaining in the Fund will get back some unknown portion of their investment over an undetermined length of time.

41. Independent analysts likewise have concluded that the Fund exceeded its 15% limit on illiquid securities. "At least one-fifth of Third Avenue's Focused Credit Fund, with less than $1 billion under management, was composed of illiquid assets, meaning they trade so infrequently that they don't have a market price,

-8-
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

according to a Reuters analysis. That's one of the highest percentages of exposure in the junk bond sector."[1]

42. The Fund was so highly concentrated in illiquid securities that it never should have operated as a mutual fund. "'That particular fund was a bit of an anomaly from the standpoint of it was really a wolf in sheep's clothing, so to speak,'" said Bradley Tank, chief investment officer of fixed income at Neuberger Berman, speaking on a conference call about his firm's 2016 outlook. "'You have a fund that has traditionally been invested in a way that's probably more consistent with what a distressed investor would do in a private equity-like framework, with lockup provisions and so on—not necessarily consistent with managing a 40 Act fund that requires daily liquidity.'"[2]

43. "Bruce Richards, chief executive officer of Marathon Asset Management, called managers of Third Avenue Management 'triple-C cowboys' for loading up on hard-to-sell unrated and low-rated bonds. 'The big picture is that mutual funds are offering daily liquidity, so they have to be very strongly managed with cash balances, lines of credit, good, quality names that you can trade in the marketplace when you need to sell, as opposed to what Third Avenue was doing,' Richards said Friday in a television interview on 'Bloomberg <GO>."[3]

44. "The event also raises questions about whether Third Avenue's focus on extremely risky and difficult to trade assets was really appropriate given the fact

---

[1] Tim McLaughlin, *Third Avenue Junk fund blowup exposes risks of unsellable assets*, Reuters (Dec. 12, 2015), http://www.reuters.com/article/us-funds-bonds-risks-analysis-idUSKBN0TU0DK20151212.

[2] Diana Britton, *Neuberger Berman: Third Avenue Fund Managed Like Private Equity*, WealthManagement.com (Dec. 17, 2015), http://wealthmanagement.com/blog/neuberger-berman-third-avenue-fund-managed-private-equity.

[3] Ben Steverman, *Bruce Richards Calls Third Avenue Management 'Triple-C Cowboys,'*, Bloomberg Business (Dec. 18, 2015), http://www.bloomberg.com/news/articles/2015-12-18/bruce-richards-calls-third-avenue-management-triple-c-cowboys-.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

that mutual funds promise investors the ability to take their money out whenever they wish. 'It is irresponsible to run the fund in such a way that they can't meet redemptions,' said Leo Acheson, an analyst at Morningstar."[4]

45. Nor did Defendants provide the promised "enhanced oversight" of the Fund's risks as they related to its concentrated position in illiquid securities. "Perhaps the most fundamental failure came at the outset in the firm's decision to offer the Focused Credit strategy as an open-end mutual fund at all. The open-end format demands daily liquidity, yet this was no ordinary high-yield bond fund. . . . The underlying distressed bonds central to the strategy were particularly prone to illiquidity. Management, and the board that oversaw the fund, failed to reconcile this inconsistency, and that mismatch ultimately proved to be the fund's undoing. However, once the decision to launch the fund had been made, management and the fund's board had a responsibility to monitor the fund's liquidity and make necessary adjustments to ensure the fund could meet redemption requests in an orderly way. They failed to do so—management in miscalculating the potential illiquidity of the fund's holdings and the board in not holding management's feet to the fire as a secondary check."[5]

46. The Fund's excessively illiquid portfolio lead it to enter into a death-spiral as redemptions caused the Fund to sell assets that lead to further losses causing further redemption requests. "Third Avenue may have been caught in a self-fulfilling spiral. As investors demanded their money back because of falling prices, the firm was forced to liquidate its holdings, pushing the prices lower on the

---

[4]Matt Egan, *CEO exits after mutual fund implodes*, CNN Money (Dec. 14, 2015), http://money.cnn.com/2015/12/11/investing/junk-bond-fund-blows-up-third-avenue/.

[5]Bridget B. Hughes and Leo Acheson, *Many Concerns About Third Avenue*, Morningstar (Dec. 22, 2015), http://news.morningstar.com/articlenet/article.aspx?id=734259.

1 lowest-rated notes and spurring even more redemption requests."[6]

2     47. "The day-to-day life of a fund manager involves spending a lot of time thinking about liquidity, and what to do if a fund faces redemptions, but these knuckleheads appear to have had blinders on, and lacked a fall-back position once cash in the portfolio was exhausted by people checking out. Thus, they faced unloading their junk at fire-sale prices to pay other defectors, which forced the shut-down to allow an orderly liquidation."[7]

8     48. Ultimately, Defendants themselves were forced to concede that the Fund's assets were illiquid. In a letter dated December 9, 2015, the Adviser notified investors that redemptions in the Fund were being halted and that the Fund's remaining assets had been placed into a liquidating trust. The letter stated that paying anticipated redemptions would have forced the Fund to sell assets at prices that represented only "a portion of those investments' fair value given current market conditions."[8] In other words, the Fund was so highly concentrated in illiquid investments that it could no longer satisfy redemption requests.

16     49. Due to Defendants' positive, but misleading or untrue statements, billions of dollars poured into Defendants' Fund at prices set by Defendants. The NAV of the Fund was approximately $10.89 per share at the beginning of the Class Period before reaching as high as $12.28 on June 20, 2014. As shown in the chart below, the NAV then began to decline, plummeting to as low as $6.48 per share on December 10, 2015. During the class period, the decline in NAV of the Fund's

---

[6]Lisa Abramowicz, *Third Avenue Freeze-Out*, Bloomberg (Dec. 10, 2015), http://www.bloomberg.com/gadfly/articles/2015-12-10/third-avenue-halts-one-high-yield-debt-spiral-but-not-others).

[7]Chuck Jaffe, *These Mutual-Fund Fumbles Cost Investors Real Money In 2015*, MarketWatch (Dec. 17, 2015), http://www.marketwatch.com/story/these-mutual-fund-fumbles-cost-investors-real-money-in-2015-2015-12-17.

[8]Letter from Third Avenue Management (Dec. 9, 2015), http://thirdave.com/wp-content/uploads/2015/12/FCF-Shareholder-Letter-12-2015.pdf).

shares represents a loss of over 36%.



50. The Fund's losses were not due simply to market forces. According to Reuters, "[t]he nearly $800 million Focused Credit Fund had a negative total return of nearly 30 percent this year before its closure, according to Morningstar Inc. By contrast, the high-yield bond fund category is off 4.2 percent this year."[9]

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired the Fund's shares traceable to Defendants' false and misleading Registration Statements and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the Officers and Directors of the entities named herein, members of their immediate families, their legal representatives, heirs, successors, or assigns, and any entity in which Defendants had or have a controlling interest.

52. The members of the Class are so numerous that joinder of all members

---

[9] Tim McLaughlin, *Third Avenue says fund seized up before collapse amid redemption flood*, Reuters (Dec. 17, 2015), http://www.reuters.com/article/us-funds-thirdavenue-sec-idUSKBN0U022620151217.

is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Registrant or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants' acts as alleged were a violation of Sections 11 and 12(a)(2) of the Securities Act of 1933;

(b) Whether statements made by Defendants to the investing public in the Registration Statements and any sales or promotional material for the Fund misrepresented or omitted material facts about the investment objectives, assets, operations, or management of the Fund; and

(c) Whether, and to what extent, the members of the Class have sustained damages and the proper measure of damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### VIOLATIONS OF SECTION 11 OF THE 1933 ACT AGAINST ALL DEFENDANTS

57.   Lead Plaintiff repeats and realleges each and every allegation contained above.  For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

58.   Lead Plaintiff brings this Count pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of himself and other members of the Class against the Trust, the Adviser, the Distributor, and the Trustee Defendants.

59.   The March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus were false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or omitted to state material facts required to be stated therein.

60.   The Trust is the registrant for the share offering.  As issuer of the shares, the Trust is strictly liable to Plaintiff and the Class for the misstatements and omissions.

61.   The Adviser was responsible for the contents and dissemination of the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus.

62.   The Distributor served as the Fund's principal underwriter of the Fund's shares, and was responsible for the contents and dissemination of the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus.

63.   The Trustee Defendants were responsible for the contents and dissemination of the March 2013 Prospectus, February 2014 Prospectus, and

March 2015 Prospectus. Each of the Trustee Defendants signed or authorized the signing of the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus.

64. None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus were true and without omissions of any material facts and were not misleading.

65. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

66. Plaintiff and other members of the Class acquired shares of the Fund pursuant and/or traceable to the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus.

67. Plaintiff and other members of the Class sustained damages. At the time of their purchases of shares of the Fund, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.

68. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the filing of this complaint. Less than one year elapsed between the time that Lead Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based and the filing of this complaint.

## COUNT II

### VIOLATIONS OF SECTION l2(a)(2) OF THE 1933 ACT AGAINST ALL DEFENDANTS

69. This Count II is asserted against all Defendants as participants in the distribution of the Fund's shares.

70. Plaintiff repeats and incorporates each and every allegation contained

above as if fully set forth herein, except to the extent any allegations above contain facts which are unnecessary or irrelevant for purposes of stating a claim under Section 12, including allegations that might be interpreted to sound in fraud or relating to any state of mind on the part of the Defendants, other than strict liability or negligence.

71. Defendants offered and sold a security, namely shares of the Fund's common stock, by means of the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus, or were controlling persons of the Fund or of those who offered and sold the Fund's shares. The March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus contained untrue and/or misleading statements of material fact, contained material omissions, or omitted material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, or contained material statements of fact that the Defendants in the exercise of reasonable care should have known were false.

72. Defendants actively solicited the sale of the Fund's shares to serve their own financial interests.

73. At the time of purchase of the Fund's shares, Plaintiff and other members of the Class did not know that the representations made to them by Defendants in connection with the distribution of shares and the matters described above were untrue, and did not know the above described omitted material facts were not disclosed.

74. As a result of the matters set forth above, pursuant to Section 12(a)(2) of the Securities Act, Plaintiff and Class members are entitled to recover upon tender of the Fund shares they purchased the consideration paid for the shares with interest thereon, less the amount of any income received thereon, or damages resulting from Defendants' conduct.

75. Plaintiff and putative Class members who do not opt out, hereby

tender their shares in the Fund.

76. Defendants are liable to Plaintiff and Class members pursuant to Section 12(a)(2) of the Securities Act, as sellers of the Fund shares.

## COUNT III

### VIOLATIONS OF SECTION 15 OF THE 1933 ACT AGAINST THE INDIVIDUAL DEFENDANTS

77. Plaintiff repeats and incorporates each allegation contained above.

78. This Count III is brought pursuant to Section 15 of the 1933 Act against the Individual Defendants.

79. Each of the Individual Defendants was a control person of the Trust, the Adviser, or the Distributor by virtue of his or her position as a trustee and/or senior officer of these Defendant entities. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other trustees and/or officers and/or major shareholders of the Defendant entities.

80. Each of the Individual Defendants was a culpable participant in the violations of Sections 11 and 12 of the 1933 Act alleged in the Counts above, based on their having signed or authorized the signing of the March 2013 Prospectus, February 2014 Prospectus, and March 2015 Prospectus and having otherwise participated in the process which allowed the share offering to be successfully completed, or having participated in the offer or sale of the shares of the Fund.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Determining that this action is a proper class action, certifying Plaintiff as representative of the Class alleged herein, and appointing his attorneys as counsel for the Classes under Federal Rule of Civil Procedure 23;

2. Awarding compensatory and rescissionary damages in favor of Plaintiff and other members of the Class against all Defendants, jointly and

severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3. Enjoining Defendants from continuing to engage in the violations of law, as alleged herein;

4. Awarding Plaintiff and other members of the Class pre-judgment and post-judgment interest;

5. Awarding Plaintiff and other members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

6. Awarding such equitable, injunctive or other relief as deemed appropriate by the Court;

7. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: January 27, 2016

Respectfully submitted,

ALAN W. SPARER
MARC HABER
SPARER LAW GROUP

By: */s/ Alan W. Sparer*
      ALAN W. SPARER

Attorneys for Plaintiff LOI TRAN